JAMES KELLEY

*vs.*

*DANIEL WALLACE et al.*

An allegation in an answer that certain acts, in themselves right, were against the provisions of an Act of Congress, and in fraud of the plaintiff, is an allegation of a legal conclusion, and not an allegation that the acts were fraudulently done.

In an action to cancel and set aside a certificate of entry of public lands, and the patent issued thereon ; if the complaint does not allege fraud, no evidence of fraud can be received on the trial.

The sufficiency of certain evidence to sustain the material findings of a referee, considered and determined.

To constitute a valid right of pre-emption under the Act of Congress of 1841, the law requires a personal settlement upon the land by the claimant, followed by occupancy of the land as the home of the settler, the erection of a dwelling house thereon, and the cultivation or improvement of the land. What shall constitute such occupancy or improvement must depend upon the circumstances of each case. The general rule is, that the settlement must be such as to show under all the circumstances a *bona fide* intention on the part of the settler to occupy and improve the premises as his home.

The sufficiency of certain evidence to sustain the conclusion, that in this case there was a *bona fide* settlement and occupancy of the land, under the Act of Congress of 1841, and that there was no abandonment of the claim by the pre-emptor, considered and determined.

A certified copy of a letter on file in the office of the Commissioner of the General Land Office, if admissible to prove the contents of the original letter, must be authenticated in the manner prescribed by the statutes of our State. *Gen. Stat., Ch.* 73, *Sec.* 58, *p.* 527.

*This case was argued and determined at the July Term, 1868.—REPORTER.

Kelley v. Wallace et al.

Kelley and Wallace were contestants for the right to pre-empt a certain forty acre tract of land. The local land officers decided in favor of Wallace, and their decision was affirmed at Washington, both by the Commissioner of the General Land Office and the Secretary of the Interior. Kelley brings this action in the District Court for Blue Earth County, to have the duplicate and patent which were issued to Wallace cancelled, and for an order or direction of the Court requiring the local land officers to receive payment for said land from him, and to issue to him the proper receipt or duplicate therefor. He joins the said land officers as parties defendants with Wallace. The cause was tried before a referee, who found in favor of the defendants. The plaintiff made a motion to set aside the report of the referee, and for a new trial, which was denied, and he appeals from the order denying the same to this Court. A sufficient statement of the pleadings, evidence, exceptions taken, and findings of the referee, for a full understanding of the questions raised and decided, appears in the opinion of the Court.

Francis Beveridge for Appellant.

Buck & Freeman for Respondent.

*By the Court*—McMillan, J.—It appears that the defendant, Wallace, commenced a settlement upon the southwest quarter of section 25, T. 107, R. 25, on the 6th day of June, 1863, pursuant to the pre-emption law, approved September 4th, 1841, and on the same day filed his declaratory statement in the proper land office ; that on the 5th of July, 1863, the plaintiff commenced a settlement on certain lands, embracing a portion of the land claimed by the defendant, namely, the southeast quarter of the southwest quarter of section 25, aforesaid, the land now in controversy. The par-

ties contested their rights respectively to enter this land before the local land office, which resulted in a decision by the land officers in favor of the defendant Wallace, and on an appeal to the Commissioner of the General Land Office, the decision was affirmed; which decision was also affirmed, on appeal to the Secretary of the Interior.

This action is brought to cancel and set aside the entry of Wallace, and the patent issued thereon.

The cause was tried by a referee, and resulted in a finding for the defendant; whereupon the plaintiff moved the Court to set aside the report of the referee, and for a new trial, which was denied.    From the order denying this motion, the plaintiff appealed to this Court.

The appellant makes several points on the appeal, which we proceed to consider.

The first and fourth points will properly be disposed of together.

" 1.—The referee erred in finding that the complaint does not allege any fraud upon the part of the respondent in procuring, and the land officers in issuing, the patent, as against the plaintiff.    The complaint does allege fraud."

" 4.—The referee erred in excluding evidence that tended to show fraud on the part of the defendant."

From an inspection of the complaint, we think it clearly appears, that there is no fraudulent intent charged against Wallace, or the land officers, in any part of their proceedings.

The allegation in the complaint, " that the decision of the register and receiver, and the confirmation thereof by the Commissioner of the General Land Office, and the Secretary of the Interior, and the issuing of the duplicate, or receipt for the purchase money of said land, to the said defendant, Wallace, by said defendants, Swift and Downer,

was against the provisions of said act of Congress and in fraud of the plaintiff," is not an allegation that the defendants, or either of them, acted fraudulently in any part of the proceedings referred to ; and the allegation that the decision was against the provisions of the act of Congress, is not an allegation that it was fraudulent.

It appears in the case, that on the trial objection was made " to all parts of testimony that tend to prove fraud on part of defendant, as incompetent and inadmissible evidence under the pleadings," and that the plaintiff was not allowed to amend his pleadings.   Whether any such evidence was offered, or passed upon, does not appear ; but if it was, we think the complaint does not allege fraud, and that such evidence would not be admissible.

The second and third points of the appellant, and which will also be disposed of together, are :   " *Second.*—The referee erred in finding as follows : 'We think a sufficient reason for his (Wallace's) not following up his claim to the land, as made in June, 1863, is found in the violence that was used, and threatened both him and his improvements, as well as the condition of his family during most of the time that intervened from the summer of 1863 to June, 1864.' "

" *Third.*—The referee erred in finding that the facts do not show an abandonment by Wallace of the claim in question."

The referee finds as facts, upon which these conclusions are based, " That Wallace in good faith made his claim to said southwest quarter of section 25, Town 107, Range 25, on the 6th of June, 1863, and that in the same month he built a shanty on the same, hauled some lumber on said claim, and dug or cleaned out a spring on the land, and that within a few days after this, the lumber that Wallace had brought on the land with a view of building thereon,

was, without the knowledge (consent) of Wallace, hauled away by said plaintiff." It further appears that between the 27th and the 30th of June, 1863, the shanty, that Wallace had put up, was also removed by some one, but by whom does not appear. It is also shown that within a few days after making his claim, Wallace bought a house, with the intention of removing the house on to his claim, but that he did not do so, for the reason that he feared it would be destroyed by violence.

And the language of plaintiff to Wallace seems to afford a reasonable ground for this conclusion; for said plaintiff testifies, "that some time in the month of June, 1863, he told Wallace that he (plaintiff) would not allow any one to build on his claim." And the testimony shows that angry and violent words passed between plaintiff and Wallace, as to their claims to said lands; and there is testimony tending to show that plaintiff, and others in concert with him, threatened to use force to eject Wallace from his claim. It is proven, that as soon as Wallace learned that his shanty had been removed from his claim, he posted up notices offering a reward for the discovery of the person who had done the act. It is also shown that Wallace, at and about the time of making these improvements, intended to remove his family—then residing in Mankato—to said claim; but on account of the ill health of his wife, he was prevented from doing so. It is also shown that there was no physician at the Agency in 1863. This illness of his wife continued through the summer and fall of 1863, so that, as Wallace believed, she was not able to be removed such a distance. And the testimony of the family physician shows that in the spring of 1864, the wife of Wallace was suffering with the disease of which she shortly after died. Wallace deeming it unsafe to remove his wife, did not move

with his family to the claim until the 8th of June, 1864, after which time Wallace and family continued to reside on the claim as their home until the — day of January, 1865, when his wife died. It is also shown that Wallace's family consisted in part of several small children, one born in July, 1863, and another not then three years old. The evidence shows that Wallace went out to his claim in November, 1863, and again in March, 1864, but it does not appear how long he remained on the claim at either of these times. In May, 1864, Wallace dug a cellar, or part of a cellar, on his claim, and in June or July, 1864, he broke ten or fifteen acres of land thereon, and, as already stated, in June, 1864, moved with his family on the claim, and remained there until the death of his wife."

We think there is evidence sufficient to sustain this finding, so far as the facts material to the action are concerned, and that the conclusions of law by the referee are substantially correct.

From the fact that Wallace, immediately upon his settlement, cleared out the spring, and, as his testimony shows, hauled lumber on to the land to build, within a week thereafter, and actually built a house or shanty on the land during the same month, it would seem to be a reasonable conclusion, that he was preparing to occupy the same with his family. If he had not been interrupted and obstructed by the plaintiff Kelley and others, by threats of violence, and the removal of his house, notwithstanding the ill health of his wife, his purpose might have been accomplished.

To have removed his wife and family to the land without a place of shelter for them, when his wife was in such feeble health, and there was no physician at the Agency, would render it almost certain that fatal consequences would ensue from her removal to this scene of strife and violence. As

it was, it appears that Wallace, having during the month of May erected a second dwelling, removed his family into it on the 8th of June, 1864, where, on the 17th of January, 1865, his wife died of the disease from which, according to the testimony of her physician, she had long been suffering.

To constitute a valid right of pre-emption under the act of 1841, the spirit and terms of the law require a personal settlement by the claimant upon the land, and the original settlement must be followed by occupancy of the land, as the home of the settler ; the erection of a dwelling house thereon, and the cultivation or improvement of the land. But what shall constitute occupancy or improvement, must depend upon the facts of each case, and no absolute rule can be laid down to govern all cases.

In the case of a married man, the settlement may be made originally without the presence of his family, and the time when the family must follow, may be different in different cases.

The only rule which can be laid down is, that the settlement and occupancy must, under all the circumstances, be reasonable as to time and manner, and show a *bona fide* intention on the part of the settler, to occupy and improve the premises. In this case, the settlement made by the defendant, Wallace, was prosecuted by immediate efforts to provide a ' place of shelter for his family ; in this he was obstructed by threats and violence, until a period when he could not, with reasonable safety to his wife, remove his family to the land, nor could he, at any time previous to the spring of 1864, remain there ; yet in November, 1863, he asserted his occupancy by going to his claim, and in March, 1864, commenced and finished his second dwelling-house. We think, under all the circumstances, there is sufficient evidence to justify the conclusion, that there was a *bona fide*

settlement and occupancy of the land by Wallace, and that his claim was not abandoned. The copy of a letter purporting to have been written by Wallace to Kelley, dated Mankato, May 26, 1864, certified by the Commissioner of the General Land Office to be a true and literal exemplification of the original, on file in his office, was properly excluded. Whether a certified copy of the letter, properly authenticated, would be admissible, we do not decide. In this instance, the certificate of the Commissioner did not conform to the requirements of the statute of our State, and for that reason, the copy was not admissible. *Gen. Stat.*, *chap.* 73, *sec.* 58, *p.* 527. The order of the District Court, denying the motion to set aside the report of the referee, and for a new trial, was not erroneous.

Judgment affirmed.